I dissent. The general rule relative to residence is provided for by section 33, Revised Codes, which, so far as pertinent here, provides:
"Every person has, in law, a residence. In determining the place of residence the following rules are to be observed:
"1. It is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he returns in seasons of repose.
"2. There can only be one residence.
"3. A residence cannot be lost until another is gained. * * *
"7. The residence can be changed only by the union of act and intent."
The residence or domicile of the marriage contracting parties — the vital question to be determined in this action — on the date of their marriage, May 18, 1915, at Spokane, Washington, must control our conclusions as to their residence. Where they lived subsequent to marriage has no bearing on the merits of this action.
It is shown by both the application for marriage license and by the certificate of marriage that both the contracting parties claimed residence in other states: the man in the state of Washington and the woman in the state of Oregon. This written evidence, combined with the testimony of Mrs. Takahashi, is the best and practically the only evidence in the record as to the domicile or residence of the parties.
"The general rule is that domicile is changed from one place to another, or one state to another, only by abandonment by a person of his first place of domicile with intention not to return, and by taking up his residence in another place with the intention of permanently residing in that place. In other words, *Page 502 
to effect a change of residence or domicile, there must be an actual abandonment of the first domicile, coupled with intention not to return to it, and there must be a new domicile acquired by actual residence in another place or jurisdiction, with the intention of making the last acquired residence a permanent home." (9 R.C.L. 542.)
The evidence in the record before us is ample to establish the actual residence of the parties in Montana for some two or three years prior to their marriage, but the record is entirely and absolutely void of any showing that either party intended to abandon his or her former residence in Washington and Oregon. Our statute, quoted above, says that residence can be changed "only by the union of act and intent." The case of United States v.Knight, 9 Cir., 299 Fed. 571, 573. a Montana case, was a suit brought by the United States against Sidney E. Knight to cancel his certificate of citizenship. Knight was an Englishman and was admitted to citizenship in the United States in Lewis and Clark county, state of Montana, November 5, 1900. Within five years thereafter he went to South Africa in the employ of an American corporation, remaining in that country and in such employment for more than twenty years, and it appears that he took part in political affairs in South Africa and voted there but always maintained that he was an American citizen and registered with the American consul general at Capetown, South Africa, as an American citizen. The action brought against him was for the purpose of cancelling his certificate of citizenship on the ground of fraudulent representation. The federal district court held that it was not shown that the defendant had taken permanent residence in South Africa and dismissed the action; on appeal to the circuit court, the district court's decision was affirmed. In the course of the opinion of the circuit court it was said:
"An American cttizen does not become a permanent resident of a foreign country by simply taking employment there with an American firm, however long his employment may continue."
It appears that Takahashi was connected with the Oriental *Page 503 
Trading Company of Seattle, Washington, and obviously continued in the employment of that concern at least to some extent during all the time down to the time of his death, as a check recently issued by that company to him, apparently for wages, was in his possession and was listed among the assets in the inventory of his property. He had an absolute right to maintain his residence in the state of Washington for any length of time that he might desire, and there is no evidence in the record to show that he ever intended to relinquish his legal residence in that state.
In order to keep within the statute, there must be shown not only that he resided in Montana during the time alleged, but that it was his intention to abandon his residence in the state of Washington. When it comes to the matter of his marrying, the only evidence that we have as to his intention in regard to his residence is the information given to the Washington officials at Spokane when he obtained his marriage license, and at that time he gave his place of residence as Seattle, Washington. It is so well established that one may maintain a legal residence separate and apart from his actual place of abode that I do not deem it necessary to present authorities on that point. Personally, the writer left Havre, Montana, nine years ago and took up his abode in the city of Helena, yet has maintained legal residence at Havre and voted there. We all know that our senators and congressmen and numerous other persons employed in the federal service maintain their residences at places other than the places where they actually live while in the service of the federal government. The right that such people have to maintain a legal residence in one place while actually living in another is a right that any other person may exercise as well as public officials.
Our statute prohibits marriage between a white person and a Japanese, as stated by the majority, but there is no such law in the state of Washington, and Takahashi and his wife were legally married in the state of Washington and their civil contract would be sustained in every particular under the statutes *Page 504 
of that state. And their marriage in the state of Washington and return to Montana, is not, in my opinion, a violation of section 5703, which provides that if a marriage contract is solemnized without the state of Montana by any person who has, prior to the time of contracting such marriage been a resident of this state, shall be void in this state. The residence referred to in section 5703 is a legal residence of the party, not the particular place where he may be employed or where he earns his living. Section 5707 provides: "All marriages contracted without the state, which would be valid by the laws of the country in which the same were contracted, are valid in this state." The parties complied with every lawful requirement of the state of Washington when they entered into their contractual marriage relation, and under our statute we have no power to deny to Mrs. Takahashi all the rights, privileges and immunities of that relation.
The fact that the two parties lived in Troy and went to Spokane to be married has no significance and was a perfectly natural act. Troy is located in the west part of the state and is much nearer to Spokane than any city of importance in Montana, and it was a perfectly natural act for the parties to go there to be married. There is nothing whatever in the record to show that either of them was cognizant of the fact that their marriage was prohibited under the laws of Montana, and while the rule is that all persons are presumed to know the law, this presumption cannot properly be applied as the basis for charging one with fraudulent intent unless it is shown that the parties so charged did have actual knowledge of the law, and even if they did know they could not legally enter into a marriage contract in Montana, such fact would not vitiate their marriage contract in the state of Washington.
The order of the trial court should be reversed and the petition of Vivian Takahashi for the appointment of her nominee as administrator should be granted, in the absence of any other ground than that mentioned which could be advanced in opposition to his appointment. *Page 505